**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

| | |
|---|---|
| IN RE: HP INKJET PRINTER LITIGATION, | No. 11-16097 |
| | D.C. No. 5:05-cv-03580-JF |
| NICKLOS CIOLINO, individually and on behalf of all those similarly situated; DANIEL FEDER, *Plaintiffs-Appellees*, | |
| v. | OPINION |
| THEODORE H. FRANK; KIMBERLY SCHRATWIESER, *Objectors-Appellants*, | |
| v. | |
| HEWLETT-PACKARD COMPANY, *Defendant-Appellee.* | |

Appeal from the United States District Court
for the Northern District of California
Jeremy D. Fogel, District Judge, Presiding

Argued and Submitted
November 5, 2012—San Francisco, California

Filed May 15, 2013

2          In re: HP Inkjet Printer Litigation

Before:  Ronald M. Gould, Marsha S. Berzon,
and Milan D. Smith, Jr., Circuit Judges.

Opinion by Judge Milan D. Smith, Jr.;
Dissent by Judge Berzon

## SUMMARY[*]

### Class Action Fairness Act / Attorneys' Fees

The panel reversed the district court's orders granting final approval to a class action settlement between Hewlett-Packard Company and a nationwide class of consumers who purchased certain HP inkjet printers, and awarding attorneys' fees.

The panel held that the attorneys' fee award to class counsel violated the Class Action Fairness Act ("CAFA"), and specifically 28 U.S.C. § 1712(a)-(c), which governs the calculation of attorneys' fees in class action cases containing a coupon component.  The panel held that when a settlement provides for coupon relief, either in whole or in part, any attorneys' fee that is "attributable to the award of coupons" must be calculated using the redemption value of the coupons.  The panel reversed and remanded, because the district court awarded fees that were "attributable to" the coupon relief, but failed to first calculate the redemption value of those coupons.

[*] This summary constitutes no part of the opinion of the court.  It has been prepared by court staff for the convenience of the reader.

Judge Berzon dissented, and would hold that there was no violation of § 1712 of CAFA, where the district court did not award a contingency fee calculated as a percentage of the purported value of the total class recovery, but instead chose to award a lodestar fee, calculated on the basis of hours worked and rates charged, carefully limited by a fair estimate of the amount of the benefit received by the class. Judge Berzon would affirm the district court because the fee award was consistent with CAFA.

---

**COUNSEL**

Theodore H. Frank (argued), Center for Class Action Fairness LLC, Washington, D.C., for Objectors-Appellants.

Niall P. McCarthy (argued), Justin T. Berger and Eric J. Beuscher, Cotchett, Pitre & McCarthy, LLP, Burlingame, California; Steven N. Berk, Berk Law PLLC, Washington, D.C., for Plaintiffs-Appellees.

Peter Sullivan, Samuel G. Liversidge (argued), and Christopher Chorba, Gibson, Dunn & Crutcher LLP, Los Angeles, California, for Defendant-Appellee.

---

**OPINION**

M. SMITH, Circuit Judge:

Objectors Kimberly Schratwieser and Theodore Frank (Objectors) appeal the district court's orders granting final approval to a class action settlement between Hewlett-Packard Company (HP) and a nationwide class of consumers

4          IN RE: HP INKJET PRINTER LITIGATION

who purchased certain HP inkjet printers between September 6, 2001 and September 1, 2010. The district court approved a settlement that provides both coupon and injunctive relief to the class members. The district court also approved an award of attorneys' fees in the amount of $1,500,000 and costs in the amount of $596,990.70.

Objectors argue that the settlement is neither fair, reasonable, nor adequate, as required by Federal Rule of Civil Procedure 23(e)(2) and Section 3 of the Class Action Fairness Act (CAFA), codified at § 28 U.S.C. 1712(e). Objectors contend that the settlement is the product of tacit collusion between class counsel and HP. Objectors also challenge the fee award, arguing it too violates CAFA, and specifically § 1712(a)–(c), which govern the calculation of attorneys' fees in class action cases containing a coupon component. Because we agree that the fees award violates CAFA, we do not address any of Objectors' other contentions. *See Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998) (holding that a class action settlement "must stand or fall in its entirety"); *see also In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 945–46 (9th Cir. 2011) (noting that vacatur of a fees award necessitates invalidation of a settlement approval order where the parties "expressly negotiated" a potentially unreasonable amount of fees). When a settlement provides for coupon relief, either in whole or in part, any attorney's fee "that is attributable to the award of coupons" must be calculated using the redemption value of the coupons. § 1712(a). Since the district court awarded fees that were "attributable to" the coupon relief, but failed to first calculate the redemption value of those coupons, we reverse the orders of the district court and remand for further proceedings consistent with this opinion.

## FACTUAL AND PROCEDURAL BACKGROUND

Plaintiffs filed three putative class actions in the Northern District of California alleging that HP engaged in unfair business practices relating to its inkjet printers' use of ink cartridges.[1]  Each of the three actions was aggressively litigated, and attorneys for both sides engaged in extensive motions practice and discovery.  Ultimately, however, plaintiffs suffered numerous setbacks including dismissal of several claims on the pleadings, denial of nationwide class certification in one of the actions, and a determination by the district judge presiding over all of the lawsuits that the plaintiffs' evidence of injury and causation was "weak."

In August 2010, more than five years after the first action was filed, the parties agreed to a global settlement.  In exchange for the plaintiffs' release of all claims against it, HP agreed to:  (1) provide eligible class members with up to $5 million in "e-credits" redeemable for printers and printer supplies on HP's website; (2) make additional disclosures on its website, in its user manuals, or in its software interfaces to explain its business practices to future purchasers of HP printers and ink; (3) pay up to $950,000 for class notice and settlement administration costs; and (4) pay up to $2,900,000

---

[1] The first action, *Ciolino*, was filed on June 16, 2005, and alleged that HP misled consumers into believing that replacement of an ink cartridge was necessary when the cartridge was not empty, and was capable of additional printing.  The *Rich* action was filed on May 22, 2006, and alleged that HP failed to disclose that its color printers use color ink to print black and white text and images, a process known in the printing industry as "underprinting."  The *Blennis* action was filed on January 17, 2007, and alleged that HP concealed that certain of its ink cartridges contained an "expiration date," after which time the cartridges would no longer work regardless of how much ink remained in the cartridge.

6          IN RE: HP INKJET PRINTER LITIGATION

in attorneys' fees and expenses. The "e-credits"—a euphemism for coupons—expire six months after issuance, are non-transferable, and cannot be used with other discounts or coupons.[2] By the express terms of the settlement, no coupons may issue until after all appeals are resolved.

On October 1, 2010, the district court consolidated the three putative class actions for settlement, granted preliminary settlement approval, provisionally certified a nationwide settlement class, and directed that the parties provide notice of the settlement. In compliance with the court's order, the parties provided notice via email, publication, and online advertisements, reaching approximately 74 percent of potential class members. Of the millions of class members who received notice, three filed formal objections, 458 submitted informal comments, 810 opted out of the settlement, and 122,000 filed claims.

On January 28, 2011, the district court held a fairness hearing at which Objectors appeared. During the hearing, the district judge noted that the underlying actions had been litigated heavily and that there were several motions "where the Court had an opportunity to evaluate the strength of the claims." Based on its previous evaluation, the court concluded that "[t]he claims are not particularly strong" and weighed in favor of settlement.

---

[2] The face value of the coupons varies depending on class membership. Under the settlement approved by the district court, the *Ciolino* class members are to receive $5 coupons for each affected HP printer they own, *Rich* class members are to receive $2 coupons, and *Blennis* class members are to receive $6 coupons.

On March 29, 2011, the district court granted final settlement approval and certified a nationwide settlement class. The court determined that the settlement was fair, reasonable, and adequate because: (1) "the settlement was arrived at as a result of arms-length, non-collusive negotiations"; (2) due to the complexity, expenses, and duration of the litigation, class members would receive "meaningful benefits on a much shorter time frame than otherwise possible"; (3) class counsel supported the settlement; (4) there was "no reason to believe that the posture of any of the cases would improve through further litigation"; and (5) the number of class members disapproving of the settlement is "miniscule by any measure."

The court also issued a separate ruling on class counsels' request for fees and expenses. Although the plaintiffs submitted bills for over $7 million in fees and expenses, class counsel requested only the portion of its lodestar HP agreed to pay—$2.3 million in fees and roughly $600,000 in costs. Citing its independent duty to determine the reasonableness of any fees award, the court meaningfully reduced the proposed award. The court held that the lodestar method was applicable under section 1712(b)(1) of CAFA and that the "key consideration" in determining the appropriate fees is reasonableness in light of the results actually achieved. Analyzing those results, the court acknowledged that while the e-credits were worth significantly less than their face value, the injunctive relief would confer some benefit on class members, although nothing close to the $16–41 million estimated by plaintiffs.[3] The court estimated the "ultimate

---

[3] We agree with our dissenting colleague that the district court could reasonably assume that "injunctive relief would be of benefit to some number of class members, because the groups of present and future

value" of the settlement to the class at roughly $1.5 million. Recognizing that it would be improper to award fees that outstrip the calculated class benefit, the court ordered HP to pay a reduced lodestar amount of $1.5 million and $596,990.70 in costs. Objectors timely appealed both the Approval and Fees Orders.

## JURISDICTION AND STANDARD OF REVIEW

We have jurisdiction under 28 U.S.C. § 1291. We review a district court's award of fees and costs to class counsel, and its method of calculation, for abuse of discretion. *In re Bluetooth*, 654 F.3d at 940 (citing *Lobatz v. U.S. W. Cellular of Cal., Inc.*, 222 F.3d 1142, 1148–49 (9th Cir. 2000)).

## DISCUSSION

Congress passed CAFA "primarily to curb perceived abuses of the class action device." *Tanoh v. Dow Chem. Co.*, 561 F.3d 945, 952 (9th Cir. 2009). One such perceived abuse is the coupon settlement, where defendants pay aggrieved class members in coupons or vouchers but pay class counsel in cash. *See generally* Sarah S. Vance, *A Primer on the Class Action Fairness Act of 2005*, 80 Tul. L. Rev. 1617, 1632–33 (2006); Geoffrey P. Miller & Lori S. Singer, *Nonpecuniary Class Action Settlements*, 60 Law & Contemp. Probs. 97, 102, 107–12 (1997). Congress was rightfully concerned with such

---

consumers of HP printer products overlap." Dissent at 32–33 n.4; *see also Kwikset Corp. v. Superior Court*, 246 P.3d 877, 895 (Cal. 2011) (re-affirming that injunctions "are the primary form of relief available under [California's unfair competition laws] to protect consumers from unfair business practices," while monetary awards are a "type of ancillary relief").

settlements: by decoupling the interests of the class and its counsel, coupon settlements may incentivize lawyers to "negotiate settlements under which class members receive nothing but essentially valueless coupons, while the class counsel receive substantial attorney's fees."[4] S. Rep. 109-14, at 29–30 (2005); *see also* Christopher R. Leslie, *A Market-Based Approach to Coupon Settlements in Antitrust and Consumer Class Action Litigation*, 49 UCLA L. Rev. 991, 991 (2002) ("Because class counsel are paid in cash, the attorneys have insufficient interest in ensuring that the settlement coupons confer value on the class.").

Section 1712 codifies Congress's effort to regulate coupon settlements. That regulation takes two forms. The first invites increased judicial scrutiny of coupon settlements generally. § 1712(e); *see also Synfuel Techs., Inc. v. DHL Express (USA), Inc.*, 463 F.3d 646, 653–54 (7th Cir. 2006); *True v. Am. Honda Motor Co.*, 749 F. Supp. 2d 1052, 1069 (C.D. Cal. 2010); S. Rep. No. 109-14, at 27 (stating that CAFA "requires greater scrutiny of coupon settlements"). The second involves a series of specific rules that govern the award of attorneys' fees in coupon class actions.

---

[4] Although we recognize that coupon settlements are generally disfavored, we do not mean to cast aspersions on all coupon settlements. The legislative history of CAFA makes clear that Congress did "not intend to forbid all non-cash settlements." S. Rep. No 109-14, at 31. Indeed, coupon or other in-kind settlements may be particularly appropriate in situations "where they provide real benefits to consumer class members." *Id.* For instance, coupon settlements may be appropriate where a defendant is in financial distress or where class members have repeat-business relationships with the defendant. *See* Lisa M. Mezzetti & Whitney R. Case, *The Coupon Can Be the Ticket: The Use of "Coupon" and Other Non-Monetary Redress in Class Action Settlements*, 18 Geo. J. Legal Ethics 1431, 1433–34 (2005).

§ 1712(a)–(d); *see also* Vance, *supra*, at 1632–33.  Our sole task on this appeal is to interpret and apply the attorneys' fees provisions of § 1712.

## I.

Class counsel are duty bound to represent the best interests of class members.  *Staton v. Boeing Co.*, 327 F.3d 938, 960 (9th Cir. 2003).  Still, because the interests of class members and class counsel nearly always diverge, courts must remain alert to the possibility that some class counsel may "urge a class settlement at a low figure or on a less-than-optimal basis in exchange for red-carpet treatment on fees."[5] *Weinberger v. Great N. Nekoosa Corp.*, 925 F.2d 518, 524 (1st Cir. 1991).

Typically, courts try to ensure faithful representation by tying together the interests of class members and class counsel.  That is, courts aim to tether the value of an attorneys' fees award to the value of the class recovery.  *See, e.g.*, *Hensley v. Eckerhart*, 461 U.S. 424, 436 (1983) (explaining that "the most critical factor [in determining an appropriate attorneys' fee] is the degree of success obtained"); *McCown v. City of Fontana*, 565 F.3d 1097, 1103–05 (9th Cir. 2008).  Where both the class and its attorneys are paid in cash, this task is fairly effortless.  The district court can assess the relative value of the attorneys' fees and the class relief simply by comparing the amount of

---

[5] *See generally* Leslie, *supra*, at 1042–52 (describing how agency costs—which "exist when a principal hires an agent to perform a task but the agent's remuneration is not directly tied to the principal's gain such that the agent may increase her payoff by being faithless"—create a risk of collusion between defendants and class counsel).

cash paid to the attorneys with the amount of cash paid to the class. The more valuable the class recovery, the greater the fees award. *Hensley*, 461 U.S. at 436. And vice versa.

But where class counsel is paid in cash, and the class is paid in some other way, for example, with coupons, comparing the value of the fees with the value of the recovery is substantially more difficult. Unlike a cash settlement, coupon settlements involve variables that make their value difficult to appraise, such as redemption rates and restrictions. *See* Miller & Singer, *supra*, at 111. For instance, a coupon settlement is likely to provide less value to class members if, like here, the coupons are non-transferable, expire soon after their issuance, and cannot be aggregated.[6] *See* Leslie, *supra*, at 1014–27; *see also* James Tharin & Brian Blockovich,

---

[6] Objectors presented evidence that the prices charged at HP.com—the only retailer that will accept the settlement coupons—are higher than those charged by other retailers. For instance, Objectors presented evidence that the same HP "Combo Pack Ink Cartridge" sells for $42.99 on HP.com, while selling for $36.99 on Amazon.com. The $6 price difference is equal to the face value of the e-credits to be awarded to *Blennis* class members, and is greater than the face value of the e-credits to be awarded to the *Rich* and *Ciolino* class members. Thus, with the possible exception of the *Blennis* class members, Objectors have presented evidence that tends to show that the redemption rate of the e-credits may be very low; presumably *Rich* and *Ciolino* class members will prefer to allow their coupons to expire rather than pay a higher price solely to gain the satisfaction of using their coupons. Considered together with the numerous other restrictions on the offered e-credits, we strongly disagree with the dissent's assessment that "[g]iven the effort involved in obtaining the coupons, it was fair [for the district court] to assume that most of the individuals who had applied for the e-credits would redeem them." Dissent at 32–33 n.4; *see also* Leslie, *supra*, at 1030–32 (describing how a defendant "can render settlement coupons worthless by simply increasing the base price of their product by the face value of the coupon.").

*Coupons and the Class Action Fairness Act*, 18 Geo. J. Legal Ethics 1443, 1445 (2005). Of course, consideration of these variables necessarily increases the complexity of the district court's task—comparing the ultimate "value" of the coupon relief with the value of a proposed fees award. And perhaps more importantly, the additional complexity also provides class counsel with the opportunity to puff the perceived value of the settlement so as to enhance their own compensation.[7] As one commentator succinctly put it, "[p]aying the class members in coupons masks the relative payment of the class counsel as compared to the amount of money actually received by the class members." Leslie, *supra*, at 1049.

Congress was well aware of these problems when it passed § 1712 of CAFA. *See, e.g.*, S. Rep. 109-14, at 16–20 (listing dozens of examples of coupon settlements "in which most—if not all—of the monetary benefits went to the class counsel, rather than the class members those attorneys were supposed to be representing"). Indeed, if the legislative history of CAFA clarifies one thing, it is this: the attorneys' fees provisions of § 1712 are intended to put an end to the "inequities" that arise when class counsel receive attorneys' fees that are grossly disproportionate to the actual value of the coupon relief obtained for the class. *See id.* at 29–32. This point cannot be overemphasized, for we can only properly interpret CAFA's text if we keep the statute's purposes clearly in mind. *See Dolan v. U.S. Postal Serv.*,

---

[7] We do not mean to suggest any intentional fiduciary breach by class counsel here. But "[e]ven if the plaintiff's attorney does not consciously or explicitly bargain for a higher fee at the expense of the beneficiaries, it is very likely that this situation has indirect or subliminal effects on the negotiations." *Staton*, 327 F.3d at 964 (quoting *Court Awarded Attorney Fees, Report of the Third Circuit Task Force*, 108 F.R.D. 237, 266 (1985)).

546 U.S. 481, 486 (2006) ("Interpretation of a [statutory] word or phrase depends upon reading the whole statutory text, considering the purpose and context of the statute, and consulting any precedents or authorities that inform the analysis.").  We now turn to that interpretation.

## II.

Objectors argue that the attorneys' fees award in this case violates § 1712(a)–(c), which govern the calculation of attorneys' fees in coupon class action cases.[8]  Those sections provide in full:

> **(a) Contingent fees in coupon settlements**.–
> If a proposed settlement in a class action provides for a recovery of coupons to a class member, the portion of any attorney's fee award to class counsel that is attributable to the award of the coupons shall be based on the value to class members of the coupons that are redeemed.
>
> **(b) Other attorney's fee awards in coupon settlements**.–

---

[8] Section 1712(d) also relates to the calculation of attorneys' fees in coupon class actions.  Specifically, subsection (d) provides that a district court may "receive expert testimony from a witness qualified to provide information on the actual value to the class members of the coupons that are redeemed." § 1712(d).  That is, subsection (d) allows the district court to receive expert testimony relevant to calculating the redemption value of the coupons, as required by § 1712(a).  *See*, Parts II.A, II.B and II.C, *infra*.  Because the district court here did not attempt to calculate the redemption value of the coupons under § 1712(a), § 1712(d) plays little role in our analysis.

**(1) In general**.– If a proposed settlement in a class action provides for a recovery of coupons to class members, and a portion of the recovery of the coupons is not used to determine the attorney's fee to be paid to class counsel, any attorney's fee award shall be based upon the amount of time class counsel reasonably expended working on the action.

**(2) Court approval**.– Any attorney's fee under this subsection shall be subject to approval by the court and shall include an appropriate attorney's fee, if any, for obtaining equitable relief, including an injunction, if applicable. Nothing in this subsection shall be construed to prohibit application of a lodestar with a multiplier method of determining attorney's fees.

**(c) Attorney's fee awards calculated on a mixed basis in coupon settlements**.– If a proposed settlement in a class action provides for an award of coupons to class members and also provides equitable relief, including injunctive relief–

(1) that portion of the attorney's fee to be paid to class counsel that is based upon a portion of the recovery of the coupons shall be calculated in accordance with subsection (a); and

> (2) that portion of the attorney's fee to be paid to class counsel that is not based upon a portion of the recovery of coupons shall be calculated in accordance with subsection (b).

§ 1712(a)–(c).

In construing the provisions of a statute, we first analyze its language to determine whether its meaning is plain. *Satterfied v. Simon & Schuster, Inc.*, 569 F.3d 946, 951 (9th Cir. 2009) (citing *McDonald v. Sun Oil Co.*, 548 F.3d 774, 780 (9th Cir. 2008)). "The preeminent canon of statutory interpretation requires us to presume that the legislature says in a statute what it means and means in a statute what is says there. Thus, our inquiry begins with the statutory text, and ends there as well if the text is unambiguous." *Id.* (internal alteration omitted) (quoting *BedRoc Ltd., LLC v. United States*, 541 U.S. 176, 183 (2004)). Where the statutory text is ambiguous, however, we may "look to other interpretive tools, including the legislative history" in order to determine the statute's best meaning. *Exxon Mobil Corp. v. Allapattah Servs., Inc.*, 545 U.S. 546, 567 (2005).

Both the majority of our panel and our dissenting colleague agree that CAFA is poorly drafted. We have previously commented on the "clumsy" and "bewildering" wording of other provisions of CAFA. *See, e.g.*, *Abrego Abrego v. The Dow Chem. Co.*, 443 F.3d 676, 681, 686 (9th Cir. 2006) (per curiam). Unfortunately, § 1712 fares no better. After all, CAFA "resulted from years of intense lobbying . . . partisan wrangling, and, following two successful filibusters, fragile compromises." Stephen B. Burbank, *The Class Action Fairness Act of 2005 in Historical*

*Context: A Preliminary View*, 156 U. Pa. L. Rev. 1439, 1441 (2008). Still, when § 1712(a)–(c) are "interpreted collectively and in context, and read together with the statute's purpose and legislative history," Dissent at 38, we believe their meaning is clear.

### A.

Subsection 1712(a) states, in relevant part, that "the portion of any attorney's fee award to class counsel that is attributable to the award of coupons shall be based on the value to class members of the coupons that are redeemed." Congress's use of the words "any" and "shall" indicate that subsection (a) is not permissive. *See Alabama v. Bozeman*, 533 U.S. 146, 153 (2011) ("The word 'shall' is ordinarily 'the language of command.'") (quoting *Escoe v. Zerbst*, 295 U.S. 490, 493 (1935)).[9]    If the district court awards "any" attorney's fees, and those attorney's fees are "attributable to the award of coupons," then the fees award must be calculated in the manner prescribed by § 1712(a) (*i.e.*, using the redemption value of the coupons). The crucial question, therefore, is what it means for an attorneys' fees award to be "attributable to" the award of coupons.

Congress did not define the term "attributable to" anywhere in CAFA. Where a statute does not define a key term, we look to the word's ordinary meaning. *See Schindler Elevator Corp. v. United States ex rel. Kirk*, 131 S. Ct. 1885, 1891 (2011) (citations omitted); *see also* Scalia & Garner,

---

[9] *See also* Antonin Scalia & Bryan A. Garner, *Reading Law: The Interpretation of Legal Texts* 112 (2012) ("The traditional, commonly repeated rule [of statutory interpretation] is that 'shall' is mandatory . . . .").

IN RE: HP INKJET PRINTER LITIGATION        17

*supra*, at 69 ("The ordinary-meaning rule is the most fundamental semantic rule of interpretation."). Fortunately for our purposes, the meaning of the term "attributable to" is plain. "Attributable to" means "to explain as caused or brought about by: regard as occurring in consequence or on account of." Webster's Third New International Dictionary (2002). Alternatively, it means "to regard as arising from a particular cause or source; ascribe." American Heritage Dictionary of the English Language (5th ed. 2011). Thus, applying the dictionary definition, an attorneys' fees award is "attributable to" an award of coupons where the attorneys' fees award is a "consequence" of the award of coupons. Or, put differently, attorneys' fees are "attributable to" an award of coupons where "*the* [singular] award of the coupons" is the condition precedent to the award of attorneys' fees.[10] § 1712(a) (emphasis added).

---

[10] Congress used the term "award" twice in § 1712(a); first in the phrase "any attorney's fee award to class counsel" and again in the phrase "the award of the coupons." The dissent claims that the word "award" as used in § 1712(a) necessarily refers to the "monetary value" of the fees and coupons. Dissent at 42–43. But this interpretation ignores the plain meaning of the statutory language. An "award" is "something that is conferred or bestowed upon a person." Webster's Third New International Dictionary (2002); *see also* American Heritage Dictionary of the English Language (4th ed. 2000) (defining an "award" as "[s]omething awarded or granted, as for merit"). Hence, the equivalent of the phrase "the award of coupons" is "the grant of coupons" or the "conferral" of coupons. Similarly, the equivalent of the phrase "the portion of any attorney's fee award to class counsel" is "the portion of any attorney's fee granted to class counsel." Taken together, the plain language of § 1712(a) commands that "the portion of any attorney's fee granted to class counsel that is attributable to the grant of the coupons shall be based on the value to class members of the coupons that are redeemed."

Were this conclusion in any doubt, a simple hypothetical confirms the majority's understanding of § 1712(a). Consider a settlement that only provides for coupon relief. In such a case, the portion of any attorneys' fees award that is attributable to the award of the coupons must be one hundred percent. Because the settlement contains only coupons, the fees award cannot be "attributable to" anything but the coupons.

Of course, one might argue that the fees award in this hypothetical case is "attributable to" the work of class counsel on the action, rather than the coupons. But one would be mistaken. Attorney's fees are *never* "attributable to" an attorney's work on the action. They are "attributable to" the relief obtained for the class. *See Class Plaintiffs v. Jaffe & Schlesinger, P.A.*, 19 F.3d 1306, 1308 (9th Cir. 1994). An attorney who works incredibly hard, but obtains nothing for the class, is not entitled to fees calculated by any method. For although class counsel's hard work on an action is presumably a necessary condition to obtaining attorney's fees, it is never a sufficient condition. Plaintiffs attorneys don't get paid simply for working; they get paid for obtaining results. Because it is the class relief that is *both* a necessary and a sufficient condition to an award of attorney's fees, it follows that an attorney's fees award can only be "attributable to," or the consequence of, the class relief, not the attorney's hard work. Hence, returning to the language of § 1712(a), where the "portion" of the attorneys' fees that are "attributable to the award of the coupons" is necessarily one hundred percent—as in a case where the settlement provides only coupon relief—"any attorney's fee award to class counsel . . . shall be based on the value to class members of the coupons that are redeemed." § 1712(a); *see also* S. Rep. 109-14, at 30 ("[I]n class action settlements in which it is

proposed that an attorney fee award be based solely on the purported value of the coupons awarded to class members, the fee award should be based on the demonstrated value of coupons actually redeemed by the class members.").

Our dissenting colleague disagrees and argues that "[i]n some cases, no portion of the attorney's fees will be 'attributable to' the coupon award *in the sense of calculated as a percentage of the coupon value*, and therefore § 1712(a) will not apply." Dissent at 43 (emphasis added). Put simply, the dissent is premised on the argument that Congress understood the term "attributable to" in § 1712(a) to mean "calculated as a percentage of" and the term "award" to be synonymous with "value." But the dissent points to no dictionary, case, or any other source that supports that view. Not one. Nor does the dissent provide any principled reason for ignoring the plain and ordinary meaning of the statutory text.[11] And if we accept, as we must, that Congress meant to give the terms "attributable to" and "award" their ordinary (dictionary) definitions, the dissent's analysis is rendered untenable. For instance, as discussed above, in a case where the class receives only coupon relief, it simply cannot be true that "no portion of the attorney's fees will be 'attributable to' the coupon award." Dissent at 43. We decline to join the dissent's attempt to render § 1712(a) a nullity. *See Duncan v. Walker*, 533 U.S. 167, 174 (2001) (explaining that courts

---

[11] The dissent relies on the headings of the various subsections of § 1712 in order to create artificial uncertainty about the otherwise plain language of § 1712(a). But "the Supreme Court has cautioned that 'the title of a statute and the heading of a section cannot limit the plain meaning of the text.'" *Northstar Financial Advisors, Inc. v. Schwab Investments*, 615 F.3d 1106, 1120 (9th Cir. 2010) (quoting *Bhd. of R.R. Trainmen v. Baltimore & O.R. Co.*, 331 U.S. 519, 528–29 (1947)); *see also Intel Corp. v. Advanced Micro Devices, Inc.*, 542 U.S. 241, 256 (2004).

are "reluctant to treat statutory terms as surplusage in any setting" particularly where the terms occupy a "pivotal place in the statutory scheme") (internal alterations and citations omitted); *see also* Robert H. Klonoff & Mark Herrmann, *The Class Action Fairness Act: An Ill-Conceived Approach to Class Settlements*, 80 Tul. L. Rev. 1695, 1699 (2006) (observing that § 1712(a) is "[t]he principal provision" Congress passed to address abusive coupon settlements).

**B.**

Whereas § 1712(a) governs cases where the class obtains only coupon relief, § 1712(b) applies in situations where a coupon settlement also provides for non-coupon relief, such as equitable or injunctive relief. Specifically, subsection (b) requires that if "a portion of *the recovery of the coupons is not used* to determine the attorney's fee to be paid to class counsel, any attorney's fee shall be based upon the amount of time class counsel reasonably expended working on the action." § 1712(b)(1) (emphasis added). Like § 1712(a), the language of § 1712(b) is not permissive—if class counsel wants to be paid "any" fees, and the "recovery of the coupons is not used to determine" those fees, the entirety of the payment "shall be" calculated "based upon the amount of time class counsel reasonably expended working on the action," *i.e.*, using the lodestar method. Section 1712(b)(2) further confirms that a court may, in its discretion, apply an appropriate multiplier to any lodestar amount it awards under subsection (b)(1) for obtaining non-coupon relief.[12]

---

[12] The dissent argues that the "use of the word 'include,' and the phrases 'if any' and 'if applicable,'" in § 1712(b)(2) make clear that the "lodestar fee provided for in subsection (b)(1) is *not* limited to equitable relief." Dissent at 47. Not so. The better reading of subsection (b)(2) is that only

Despite the statutory language indicating that § 1712(b) only applies where "the recovery of the coupons is not used to determine the attorney's fee to be paid to class counsel," the dissent argues that a district court can award lodestar fees under § 1712(b) to compensate class counsel for obtaining either coupon relief or non-coupon relief.[13]  To reach that conclusion, however, our dissenting colleague must entirely ignore the language of § 1712(a).  As we have already explained, the unambiguous command of § 1712(a) requires that "any attorney's fee" awarded for obtaining coupon relief be calculated using the redemption value of the coupons.  The dissent's interpretation of § 1712(b) would read § 1712(a)

---

"appropriate" lodestar fees should be awarded under § 1712(b)(1).  Just because the class obtains equitable or injunctive relief does not mean attorneys' fees are necessarily appropriate.  The phrases "if any" and "if applicable" confirm that a district court may refuse to award any lodestar fees for obtaining equitable or injunctive relief if such fees would not otherwise be warranted.  For instance, a district judge might refuse to award any lodestar fees where the value of the equitable or injunctive relief obtained for the class is de minimis.

[13] The dissent cites to a smattering of district court cases that hold that subsection (b) "allows the calculation of fees in a coupon settlement on the basis of [the] hours class counsel worked." Dissent at 48 n. 11.  Of course, that is hardly controversial, as we now hold the same.  Our dissenting colleague does not cite any cases, however, that hold what she otherwise would—that the lodestar method may be used to award fees in exchange for class counsel obtaining exclusively coupon relief.  We further note that a number of academics who have considered the issue have rejected the dissent's interpretation.  *See, e.g.*, Vance, *supra*, at 1632–33 (noting that "any portion of the attorneys' fee that is based on the coupon award must be based on the value of the coupons redeemed"); Klonoff & Herrmann, *supra*, at 1703–04 (observing that CAFA "makes clear that the coupon-related fee award in settlements that include both coupon and noncoupon components will be calculated based on the coupons that are redeemed.  The portion of fees based on the equitable relief portion of the settlement must be based on lodestar principles.").

completely out of the statute. "Under accepted canons of statutory interpretation, we must . . . mak[e] every effort not to interpret a provision in a manner that renders other provisions of the same statute inconsistent, meaningless or superfluous." *Boise Cascade Corp. v. United States EPA*, 942 F.2d 1427, 1432 (9th Cir. 1991); *see also* Scalia & Garner, *supra*, at 180 ("[I]t is invariably true that intelligent drafters do not contradict themselves . . . .").

The dissent's interpretation of § 1712(b) is also belied by that subsection's legislative history. For instance, the Senate Report from the Committee on the Judiciary states that "Section 1712(b) confirms the appropriateness of determining attorney's fees on [a lodestar] basis in connection with a settlement *based in part on coupon relief*." S. Rep. 109-14, at 30 (emphasis added). The Committee Report does *not* say that § 1712(b) "confirms the appropriateness" of awarding lodestar fees in cases based "solely" on coupon relief. As already noted, if the Committee Report did say that, it would nullify the command of § 1712(a). Rather, the legislative history of § 1712(b) confirms the majority's understanding of § 1712(b)—a district court may award lodestar fees under subsection (b)(1) but only where the settlement is based "in part" on coupon relief. *Id.*

## C.

To the extent that § 1712(a) and (b) leave any ambiguity regarding the meaning of CAFA's attorneys' fees provisions, § 1712(c) eliminates that doubt. Section 1712(c) begins by defining its scope: subsection (c) applies whenever a

settlement provides both coupon and equitable relief.[14]   In such "mixed" settlements, § 1712(c) serves to ensure that class counsel get paid for all of the benefits they secure for the class.  Specifically, the statutory language in § 1712(c), which in part incorporates the standard of § 1712(a), establishes this general rule: If a settlement gives coupon and equitable relief and the district court sets attorneys' fees based on the value of the entire settlement, and not solely on the basis of injunctive relief, then the district court must use the value of the coupons redeemed when determining the value of the coupons part of the settlement.

The practical effect of § 1712(c) is that the district court must perform two separate calculations to fully compensate class counsel.  First, under subsection (a), the court must determine a reasonable contingency fee based on the actual redemption value of the coupons awarded.[15]  Second, under subsection (b), the court must determine a reasonable lodestar amount to compensate class counsel for any non-coupon relief obtained.[16]   This lodestar amount can be further adjusted upwards or downwards using an appropriate multiplier.  § 1712(b)(2).  In the end, the total amount of fees

---

[14] Specifically, the first phrase of § 1712(c) reads:  "If a proposed settlement in a class action provides for an award of coupons to class members and also provides for equitable relief, including injunctive relief—."

[15] Section 1712(c)(1) states: "that portion of the attorney's fee to be paid to class counsel that is based upon a portion of the recovery of the coupons shall be calculated in accordance with subsection [1712](a)[.]"

[16] Section 1712(c)(2) provides: "that portion of the attorney's fee to be paid to class counsel that is not based upon a portion of the recovery of the coupons shall be calculated in accordance with subsection [1712](b)."

awarded under subsection (c) will be the sum of the amounts calculated under subsections (a) and (b).

Although we believe the language of § 1712(c) is clear, we note that the legislative history confirms our understanding of § 1712(c). Describing that section, the legislative history states:

> In some class action settlements, the terms may be a combination of coupon relief, plus some form of equitable relief, including an injunction. In such circumstances, the settlement *may also include fees for obtaining the equitable relief.* Thus, if a proposed settlement provides for both coupons and equitable relief, *then the portion of the award that is a contingent fee based on the value of the coupons must be calculated based on the value of the redeemed coupons, and the portion not based on the value of the coupons should be based on the time spent by class counsel on the case.*

S. Rep. 109-14, at 31(emphasis added). The above-quoted passage makes clear that CAFA only permits district courts to award lodestar fees when those fees are "not based on the value of the coupons." *Id.* That is, § 1712(c) confirms that lodestar fees may only be awarded in exchange for obtaining non-coupon relief. Indeed, it can be no other way. If a settlement contains only equitable relief, then it is not a coupon settlement and § 1712 simply does not apply. If a settlement contains only coupon relief, however, § 1712(a) must apply, because the attorneys' fees awarded in such a case must necessarily be "based on the value of the coupons."

*Id*; *see supra* Part II.A.  Section 1712(b), therefore, can only come into play when a settlement contains both coupon relief and equitable relief—precisely the situation described in § 1712(c).

The dissent attempts to explain away the meaning of § 1712(c), but is once again tripped up by the language of § 1712(a).  For instance, our dissenting colleague argues that "[n]othing in the text of either subparagraph [of § 1712(c)] excludes the possibility that, in cases involving both coupon and equitable relief, *no portion* of the fee award is to be paid in the manner addressed by that paragraph."  Dissent at 49.  Our colleague is mistaken.  Section 1712(c) directs the district court to calculate fees in mixed settlements "in accordance with" subsections (a) and (b).  And the language of § 1712(a) *does* "exclude the possibility" that lodestar fees may be awarded in exchange for coupon relief.  By incorporating the standard of § 1712(a) into its own, then, § 1712(c) dictates that lodestar fees may only be awarded where class counsel obtains non-coupon relief.

Finally, we note that in addition to its other flaws, the dissent's interpretation of § 1712 runs counter to one of the main purposes of CAFA: discouraging coupon settlements— particularly those where presumably valuable (but actually worthless) coupons form some part of the basis for an attorneys' fees award.  *See supra* Part I.  By tying attorney compensation to the actual value of the coupon relief, Congress aimed to prevent class counsel from walking away from a case with a windfall, while class members walk away with nothing.  *See* S. Rep. 109-14, at 30 ("[T]he fee award should be based on the demonstrated value of coupons actually redeemed by the class members.  Thus, if a settlement agreement promises the issuance of $5 million in

coupons to the putative class members, but only 1/5 of potential class members actually redeem the coupons at issue, then the lawyer's contingency fee should be based on a recovery of $1 million—not a recovery of $5 million."). The dissent, however, would apparently allow district courts to award attorneys' fees based entirely on the *perceived* value of the coupons. Indeed, our dissenting colleague argues that we should permit district courts to award lodestar fees in exchange for coupon relief without ever requiring the district court to consider the *actual* value of the class relief, as measured by the coupons' redemption value.[17] Thus, in spite of Congress's clear intention to tie class counsels' compensation to that of the class, the dissent asks us to tolerate the precise abuse § 1712 set about to eliminate.[18] We decline to do so.

---

[17] If § 1712(a) means anything, it means that Congress has determined that the best way to appraise the size of the benefit class members receive from a coupon settlement is to calculate the redemption value of the coupons.

[18] It is worth noting that the dissent's proposed approach would violate not only CAFA, but the Supreme Court's established attorneys' fees jurisprudence as well. Even under the lodestar method, the district court must adjust the amount of any fees award "to account for the degree of success class counsel attained." *In re Bluetooth*, 654 F.3d at 944; *see also Hensley*, 461 U.S. at 436. But a court cannot judge counsels' success without first calculating the value of the class relief. And in a coupon class action, the court cannot value the class relief without knowing the redemption value of the coupons. Thus under *Hensley* and its progeny, any lodestar cross-check should be performed in reference to the redemption value of the coupons—something our dissenting colleague apparently would not require. It is the dissent's approach, not the majority's, that "ignores the safeguards that exist independent of CAFA to prevent" class action abuse. Dissent at 51.

### III.

We now return to the Objectors' contention that the district court erred when it awarded $1.5 million in attorneys' fees using solely the lodestar method, without first calculating the redemption value of the coupons. We agree with Objectors that the district court erred. The district court awarded lodestar fees based on its supposition that the "ultimate value" of this settlement is $1.5 million. This $1.5 million figure included the court's valuation of both the injunctive *and* coupon relief. But § 1712(a) and (c) required the district court to calculate the redemption value of the coupons before awarding any attorneys' fees that were "attributable to" the coupon relief. *See supra* Part II. Hence, the district court abused its discretion where it made a rough estimate of the ultimate value of this settlement, and then awarded fees in exchange for obtaining coupon relief without considering the redemption value of the coupons.

We note, however, that the responsibility for this error lies principally with the parties. Because the settlement agreement specifies that no coupons may issue until after entry of a final judgment, it would have been impossible for the district court to calculate the redemption value of the coupons as required by § 1712(a). By structuring the settlement in this way, the parties essentially invited the error here. Of course, had the settlement been structured so that the redemption value of the coupons was ascertainable before final settlement approval, plaintiffs' attorneys would have been entitled to seek compensation for both the coupon and

28          In re: HP Inkjet Printer Litigation

the injunctive relief obtained for the class.[19]  *See* § 1712(c). Because the parties did not do so, however, we are required to reverse.

## CONCLUSION

Under § 1712 of CAFA, a district court may not award attorneys' fees to class counsel that are "attributable to" an award of coupons without first considering the redemption value of the coupons.  A district court may, however, award lodestar fees to compensate class counsel for any non-coupon relief they obtain, such as injunctive relief.  Because the

---

[19] For example, a fees award can be bifurcated or staggered to take into account the speculative nature of at least a portion of a class recovery. *See, e.g.*, *In re Prudential Ins. Co. Am. Sales Practice Litig. Agent Actions*, 148 F.3d 283, 334 (3d Cir. 1998) ("The district court's plan [to bifurcate the fees award was a sound exercise of its discretion that] was designed to overcome the speculative nature of the tentative and imprecise settlement valuations.  It took into account the settlement's more definite terms by providing an immediate payment based on a percentage of the guaranteed minimum recovery of $410 million, while requiring future payments to be based on actual results in recognition that the ultimate class recovery is not quantifiable at this point."); *In re AT&T Corp.*, 455 F.3d 160, 175 (3d Cir. 2006) (recognizing that a bifurcated fees structure "obviate[d] the need to guesstimate the value of the settlement."); *see also Foster v. Bd. of Sch. Comm'rs*, 810 F.2d 1021, 1024 (11th Cir. 1987) (noting district court's decision to award attorney's fees to prevailing parties after each stage of a bifurcated trial).  We leave open the question how best to award attorneys' fees under § 1712.  *See* Klonoff & Herrmann, *supra*, at 1701–02 (discussing procedures district courts might employ to award attorneys' fees based on the redemption value of coupon relief).

attorneys' fees award in this case violates § 1712, we reverse and remand to the district court for further proceedings consistent with this opinion.

**REVERSED, VACATED AND REMANDED.**

BERZON, Circuit Judge, dissenting:

I respectfully dissent. I decidedly disagree with the majority's analysis of the fee award's compliance with 28 U.S.C. § 1712,[1] the coupon settlement provision of the Class Action Fairness Act of 2005 ("CAFA"), Pub. L. No. 109-2, 119 Stat. 4 (codified in scattered sections of 28 U.S.C.).

The majority interprets CAFA as requiring that *any* attorney's fees awarded for work done toward a coupon settlement be calculated as a percentage of the value of coupons redeemed. That interpretation of § 1712 would allow lodestar fees for work resulting in injunctive relief, but not for work resulting in coupons. As to the latter, the majority insists that the district court *must* award fees as a percentage of the coupons actually redeemed, rather than calculating fees on the basis of hourly rates for time reasonably expended, under a lodestar approach. *See Lane v. Facebook, Inc.*, 696 F.3d 811, 818 (9th Cir. 2012). That is not what the statute says.

---

[1] All further references to § 1712 are to 28 U.S.C. § 1712.

On my reading of the statute, CAFA allows the use of a lodestar to calculate attorney's fees on the basis of hours reasonably expended on the class action as a whole, rather than as a percentage of the value of the class recovery. That permission applies whether the relief obtained for the class involves, in whole or in part, coupons, or whether it does not. The limit CAFA imposes with regard to cases in which there is a coupon recovery is a limit on the district court's method of calculating percentage-of-recovery fees, should it choose that approach. So viewed, § 1712(a) regulates *how* a percentage-of-recovery fee should be calculated, if that method is used to award attorney's fees for a coupon settlement; it does not dictate *whether* a percentage- of-recovery method must be used. Subsections 1712(b) and (c), in turn, provide that a lodestar method may be used either as an alternative to, or in combination with, a percentage-of-recovery calculation.

**I**

To begin, it is helpful to review the process the district court used to determine the fee award in this case, as that account helps to illuminate the impracticalities of the majority's CAFA interpretation. The starting point for the court's analysis was the plaintiffs' asserted lodestar figure of $7,109,247.09, representing more than 17,000 hours of time "spent on litigation." Of that total, the plaintiffs requested thirty-two percent, or $2.3 million plus $600,000 in costs, recognizing that the settlement represented at best a very partial vindication of the class claims. *See Hensley v. Eckerhart*, 461 U.S. 424, 436 (1983). The plaintiffs in their submission did not distinguish between hours worked toward

the coupon portion of the settlement and hours worked toward the injunctive relief.[2]

Nor could they have. The record indicates that the bulk of the approximately 17,000 hours worked were spent on the merits of the lawsuit. The relief agreed upon was determined in the course of negotiating the settlement, but was not the subject of the discovery disputes, motions, briefs, and arguments that constituted the underlying litigation.[3]

---

[2] The settlement left the district court full authority to determine a reasonable fee. The defendants promised only not to contest an award of $2,900,000 or less.

[3] The district court docket sheets for the three consolidated actions indicate that there was fairly extensive motion practice between January 2006 and March 2010, including, *inter alia*, motions to dismiss, motions for class certification, motions for summary judgment, and motions to compel discovery responses. An April 2008 status report on the discovery motions in the Ciolino action indicates that the plaintiffs had reviewed 179 Hewlett Packard (HP) "i-Care" entries (customer complaints to HP). According to the declaration submitted on behalf of class counsel in support of their motion for attorney's fees, the investigation into the facts and law relating to the complaints included:

> (1) the depositions of approximately a dozen witnesses; (2) the review of hundreds of thousands of pages of documents; (3) more than 100 written discovery requests; (4) the inspection of several of the HP Inkjet printers at issue; (5) consultations with industry personnel; (6) extensive work with experts including the design and implementation of independent testing; (7) numerous interviews of witnesses and putative members of the classes; (8) the evaluation of information provided by current or former employees of HP (including the HP engineers with primary

Just as the plaintiffs did not differentiate fees according to the relief obtained, so, too, the district court considered the reasonableness of the attorney's fees in light of the benefit conferred on the class by *both* the e-credits and the injunctive relief. The court found the actual cash value of the e-credits to be "significantly less than [the] $1.5 million" face value of the credits approved as of the date of the order. After acknowledging that "the discount in the cash value of the e-credits is mitigated by [the] value of the injunctive relief achieved by the settlement," but finding that "no precise value can be placed on the settlement in light of the many uncertainties involved," the court concluded that "the ultimate value of the settlement to the class is roughly $1.5 million."[4] To that ballpark estimate of the total value of the

---

responsibility for the design of some of the HP inkjet printer models at issue and matters related thereto); and (9) legal research as to the sufficiency of the claims.

In January 2010, the parties to the three actions filed stipulations continuing the adjudication of pending motions to allow for mediation and settlement discussions to proceed. From that point—four years into the litigation—counsel expended time in mediation, working toward a settlement. It thus appears that the vast majority of the fees were incurred prior to the commencement of settlement negotiations. And although *some* portion of the 17,000 hours represents work done toward negotiating the coupon and injunctive relief, given how settlement negotiations ordinarily proceed, sorting out hours applicable to one kind of relief or the other is likely to be exceedingly difficult.

[4] Notably, although it was not yet known at the time of settlement how many e-credits would be redeemed, many class members had already taken affirmative steps to obtain e-credits. Unlike the typical coupon settlement in which the defendants automatically send coupons to all eligible class members, in this case, class members were required to apply before the settlement approval for the e-credits, using an online claim form. At the time of the district court's approval of the fee award, "the

coupon and equitable relief, combined, the court compared the plaintiffs' requested lodestar figure, adjusting the fees downward to $1.5 million plus costs to ensure the fee award reflected the class members' limited recovery.

Precisely because the value of the award obtained by the class members here—e-credits and injunctive relief—is difficult to quantify, it made sense for the court to calculate the fee amount as a function of the hours counsel worked on the case, rather than a percentage of the class recovery. *See Staton v. Boeing Co.*, 327 F.3d 938, 974 (9th Cir. 2003). As in *Hanlon v. Chrysler Corp.*, 150 F.3d 1011 (9th Cir. 1998), the district court used its approximate valuation of the coupon and injunctive relief "only as a cross-check of the lodestar amount, reject[ing] the idea of a straight percentage recovery because of its uncertainty as to the valuation of the settlement." *Staton*, 327 F.3d at 973 (alteration in original)

---

settlement administrator had received 122,410 claims for 202,176 printers." Given the effort involved in obtaining the coupons, it was fair to assume that most of the individuals who had applied for the e-credits would redeem them. The court, therefore, reasonably looked to the number of coupons applied for as of the date of settlement, and used, as a rough cross-check on lodestar-based fees, their collective face value of $1,465,629.00, *discounted* in light of the additional steps necessary to obtain the credits and the restrictions placed on their use.

In addition, in valuing the relief obtained, the district court could reasonably assume the injunctive relief would be of benefit to some number of class members, because the groups of present and future consumers of HP printer products overlap. As printers are quasi-durable goods, their owners who purchase HP printer supplies and accessories today are also likely to purchase those products in the future, and therefore likely to benefit from improvements in the accuracy of information and instructions disclosed by HP online, in user manuals, and on product packaging.

(quoting *Hanlon*, 150 F.3d at 1029) (internal quotation marks omitted).

This approach—CAFA aside for the moment—was entirely appropriate. There are no statutory fees at issue here, as there are in some civil rights class actions. So the attorney's payment had to come from a constructive or "putative" common fund. *Cf. id.* at 966 (referring to the hypothetical "fund" constructed by adding together the amount defendants agreed to pay in damages, attorney's fees, and costs, and a gross amount of money ascribed to the injunctive relief, as a "putative fund"). Our uniform case law, both before and after CAFA, affords district courts discretion to calculate attorney's fees in common fund cases either on a percentage-of-recovery basis, according to which the court sets fees as a percentage of the overall fund, *or* on a lodestar basis.[5] *See In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 942 (9th Cir. 2011) (recognizing that courts have discretion to choose either method as a primary basis for calculation, provided they exercise their discretion "so as to achieve a reasonable result"); *In re Mercury Interactive Corp. Secs. Litig.*, 618 F.3d 988, 992 (9th Cir. 2010) (citing *Powers v. Eichen*, 229 F.3d 1249, 1256 (9th Cir. 2000)); *Staton*, 327 F.3d at 967–68; *Hanlon*, 150 F.3d at 1029; *In re Wash.*

---

[5] As we explained in *Staton*, where parties seek an attorney's fee award calculated as a percentage of the value of a common fund—whether putative or actual—they may agree on a total fund amount and then "class counsel will apply to the court for an award from the fund, using common fund fee principles," to ensure sufficient judicial checks on the reasonableness of the fee award. *Staton*, 327 F.3d at 972. "In those circumstances, the agreement as a whole does not stand or fall on the amount of fees. Instead, after the court determines the reasonable amount of attorney's fees, all the remaining value of the fund belongs to the class rather than reverting to the defendant." *Id.*

*Pub. Power Supply Sys. Secs. Litig.*, 19 F.3d 1291, 1295–96 (9th Cir. 1994).

Although a lodestar figure is "presumptively reasonable," *Cunningham v. Cnty. of L.A.*, 879 F.2d 481, 488 (9th Cir. 1989), district courts have an independent obligation under Federal Rule of Civil Procedure 23(h) to ensure the reasonableness of fees. *See Hensley*, 461 U.S. at 440; *In re Bluetooth*, 654 F.3d at 941 (citing *Staton*, 327 F.3d at 963–64). To meet this obligation, our case law specifies, the fairness of the lodestar amount should be gauged against the overall class recovery, *see In re Bluetooth*, 654 F.3d at 942, adjusting the lodestar fees upward or downward as necessary to ensure their reasonableness, *see Hanlon*, 150 F.3d at 1029; *see also Kerr v. Screen Actors Guild, Inc.*, 526 F.2d 67, 70 (9th Cir. 1975) (enumerating factors that bear on whether a court should deviate from the lodestar figure). In doing so, the district court must weigh the requested lodestar figure against a variety of factors, foremost among them the results obtained for the class, monetary and non-monetary alike. *See Hensley*, 461 U.S. at 434–36; *McCown v. City of Fontana*, 565 F.3d 1097, 1102 (9th Cir. 2009).

In settled cases involving constructive common funds, we have encouraged district courts to review the reasonableness of lodestar fees by cross-checking the lodestar calculations against a percentage fee, thereby "guard[ing] against an unreasonable result" and "assur[ing] that counsel's fee does not dwarf class recovery." *In re Bluetooth*, 654 F.3d at 944–45 (citations and internal quotation marks omitted). "If the lodestar amount overcompensates the attorneys according to the 25% benchmark standard, then a second look to evaluate the reasonableness of the hours worked and rates claimed is appropriate." *In re Coordinated Pretrial*

*Proceedings in Petrol. Prods. Antitrust Litig.*, 109 F.3d 602, 607 (9th Cir. 1997).

Notably, our cases do not suggest that the fee award must be equally justifiable under both the lodestar and the percentage methods, or that the percentage method, when used as a cross-check, must be precise. For example, in *Torrisi v. Tucson Electric Power Company*, 8 F.3d 1370, 1376–77 (9th Cir. 1993), we upheld as reasonable a percentage fee award of nearly $8 million, although the lodestar amount came to only $3 million. An equal justification requirement would defeat the purpose of affording district courts the choice to employ one method when the other is impracticable, such as when the value of class relief is difficult to quantify.

Here, the district court did the comparison and took the requisite second look: The court explicitly calculated "a reasonable lodestar amount"; compared "the settlement's attorney's fee award and the benefit to the class or degree of success in the litigation"; and adjusted the lodestar amount accordingly. *See In re Bluetooth*, 654 F.3d at 943. In the end, the district court reduced the fee award considerably below the requested amount, 32% of the lodestar figure, even though there was "no reason at all to doubt that counsel put in the hours they claim." By doing so, the district court here conscientiously did "assure itself—and us—that the amount awarded [to counsel] was not unreasonably excessive in light of the results achieved."[6] In contrast, the district court in

---

[6] Anything more than nominal or *de minimis* relief can justify lodestar fees, especially where the fees awarded are only a small fraction of the lodestar request. *See Farrar v. Hobby*, 506 U.S. 103, 116–18 (1992) (O'Connor, J., concurring). "The *Farrar* exception, which would allow

*Bluetooth* simply accepted the fee amount requested by the plaintiffs and not contested by the defendants.

According to the majority, the district court's approach, even if fully compliant with the methodology for determining fees for settled class action cases laid out in our precedent, was all wrong under § 1712 of CAFA. That statute, the majority maintains, mandates that the district court: (1) could not determine the fee award at all until after the e-credits were redeemed; (2) was required to award a large part of the fees by the percentage method rather than as lodestar fees; and (3) was required somehow to separate out the fees traceable to the e-credit relief from the fees traceable to the injunctive relief, even though nearly all of the time spent by the lawyers dealt with liability issues and not with relief.

---

the court to dispense with the calculation of a lodestar and simply establish a low fee or no fee at all, is limited to cases in which the civil rights plaintiff 'prevailed' but received only nominal damages and achieved only 'technical' success." *Morales v. City of San Rafael*, 96 F.3d 359, 362–63 (9th Cir. 1996), *as amended on denial of reh'g*, 108 F.3d 981 (9th Cir. 1997); *accord Mahach-Watkins v. Depee*, 593 F.3d 1054, 1059 (9th Cir. 2010).

It is true that the e-credits offered by Hewlett Packard are worth somewhat less than their face value, and that the injunctive relief is worth far less than the plaintiffs' estimate of $16–$41 million. But the settlement achieved here is not a merely "technical" or "de minimis" victory like that of the plaintiffs in *Farrar*, who were awarded only one dollar out of the $17 million they sought. *See Farrar*, 506 U.S. at 108. The district court's estimate of the total value of the relief as $1.5 million is supported by the record; the majority does not suggest otherwise.

## II

I turn now to whether, as the majority supposes, the CAFA provisions concerning coupon settlements outlaw the district court's approach to determining fees, and substitute instead the majority's rigid approach, just outlined. They do not. The CAFA provisions on which the majority relies permit lodestar-based fees for coupon settlements, and they do not withdraw that permission when, as our precedents for fee settlements require, the district court considers an estimate of the total benefit conferred in determining the amount of a reasonable lodestar-based fee.

The majority insists that § 1712 (a) is perfectly clear, and can only mean that *any* attorney's fees for litigation that results in a settlement including coupons must be calculated, at least in part, as a percentage of the coupon recovery, rather than as traditional lodestar fees. Not so. When the pertinent subsections of § 1712 are interpreted collectively and in context, and read together with the statute's purpose and legislative history, it becomes clear that the provisions permit *two* methods—not one—of calculating attorney's fees in cases involving coupon settlements: the percentage-of-recovery method, referred to in the statute as "contingent fees," *see* § 1712(a) ("Contingent fees in coupon settlements"), and the lodestar, payment-for-reasonable-time-worked method, discussed in § 1712(b) ("Other attorney's fee awards in coupon settlements"). The dichotomy addressed in § 1712 as a whole is between these two *approaches to awarding attorney's fees* in coupon settlements—not, as the majority suggests, between two *types of class relief*: coupons and injunctions. Section 1712 provides for the use of *either* fee calculation method, as alternatives or in combination,

regulating *how* each method should be applied, not which method a court should use.

## A

Section 1712 is titled "Coupon settlements," indicating that the section applies generally to such settlements, whether coupons represent the totality of a class award or a component thereof.[7]  As relevant here, subsections (a) through (c) discuss attorney's fees in such actions.[8]  The

---

[7] Although the title of a statute or section heading cannot limit the plain meaning of the statutory text or create ambiguity where none exists, *see Bhd. of R.R. Trainmen v. Baltimore & Ohio R.R.*, 331 U.S. 519, 528–29 (1947); *UMG Recordings, Inc. v. Shelter Capital Partners LLC*, – F.3d –, 2013 WL 1092793, at *11 n.13 (9th Cir. Mar. 14 2013); *Northstar Fin. Advisors, Inc. v. Schwab Invs.*, 615 F.3d 1106, 1120 (9th Cir. 2010); *Pike v. United States*, 340 F.2d 487, 489 (9th Cir. 1965), "statutory titles and section headings are tools available for the resolution of a doubt about the meaning of a statute." *Fla. Dep't of Revenue v. Piccadilly Cafeterias, Inc.*, 554 U.S. 33, 47 (2008) (quoting *Porter v. Nussle*, 534 U.S. 516, 528 (2002)) (internal quotation marks omitted); *see also Almendarez-Torres v. United States*, 523 U.S. 224, 234 (1998); *Frankl v. HTH Corp.*, 650 F.3d 1334, 1351 (9th Cir. 2011). Thus, "[a]lthough statutory titles are not part of the legislation, they may be instructive in putting the statute in context." *Singh v. Gonzales*, 499 F.3d 969, 977 (9th Cir. 2007).

Here, the section title and all of the subheadings of the CAFA provision codified at 28 U.S.C. § 1712 were included in the original bill. *See* CAFA, Pub. L. No. 109-2, 119 Stat. 4 (2005). Where that is so, and particularly where a section title or heading is reinforced by legislative history, it can be presumed that it "does not reflect careless, or mistaken, drafting." *See Almendarez-Torres*, 523 U.S. at 234.

[8] Subsections 1712(d) and (e), not discussed in the majority opinion, provide for, respectively, the court's receipt of expert testimony regarding the actual value to the class members of coupons redeemed and the holding of a hearing to determine whether the settlement is fair,

majority asserts that subsection (a) of § 1712 "governs cases where the class obtains only coupon relief," while section (b) addresses cases in which the settlement includes mixed forms of relief. Maj. Op. at 20. But nothing in the text of either subsection (a) or (b) turns its application on the composition of the class relief. Rather, subsections (a) through (c) all address remuneration of attorneys in cases involving coupon relief; what distinguishes them is the methodologies of fee calculation that they describe, not the type of relief to which they apply.

I begin, as does the majority, with § 1712(a), entitled "Contingent fees in coupon settlements," which states: "If a proposed settlement in a class action provides for a recovery of coupons to a class member, the portion of any attorney's fee award to class counsel that is attributable to the award of the coupons shall be based on the value to class members of the coupons that are redeemed." § 1712(a). The language of the subsection, the term "contingent fee" in the heading, and the legislative history of CAFA all comfortably support a reading of "attributable to the award of the coupons" as denoting "derived from" or "calculated as a percentage of" the coupons' value. And, as I explain in Parts B and C, *infra*, *only* with that understanding can § 1712(a) coexist sensibly with the other pertinent provisions, § 1712(b) and (c).

---

reasonable, and adequate. Although both concern fee calculations, neither is directly relevant here.

The phrase "contingent fees" is a term of art in the attorney's fee realm[9]: "Contingency fee arrangements . . . are arrangements where an attorney's fee is based on a percentage of the amount recovered by his client." *Chalmers v. City of L.A.*, 796 F.2d 1205, 1212 n.4 (9th Cir. 1986), *as amended on denial of reh'g*, 808 F.2d 1373 (9th Cir. 1987). Similarly, Black's Law Dictionary defines "contingent fee" as: "A fee charged for a lawyer's services only if the lawsuit is successful or is favorably settled out of court. Contingent fees are usu[ally] calculated as a percentage of the client's net recovery (such as 25% of the recovery if the case is settled, and 33% if the case is won at trial)." Black's Law Dictionary 362 (9th ed. 2009). In contrast to lodestar fees, then, contingent fees hinge on the outcome for the clients, rather than the input of the attorneys, and ordinarily are calculated as a percentage of the clients' recovery.[10] In short, as used in

---

[9] "[W]here Congress borrows terms of art in which are accumulated the legal tradition and meaning of centuries of practice, it presumably knows and adopts the cluster of ideas that were attached to each borrowed word in the body of learning from which it was taken and the meaning its use will convey to the judicial mind unless otherwise instructed." *INS v. St. Cyr*, 533 U.S. 289, 312 n.35 (2001) (quoting *Morissette v. United States*, 342 U.S. 246, 263 (1952)).

[10] Commentators have interpreted CAFA's provision on "contingent fees," § 1712(a), as regulating the use of the percentage method of calculating fees where the class award includes coupons. *See, e.g.*, *Report on Contingent Fees in Class Action Litigation*, 25 Rev. Litig. 459, 473 (2006) (describing how CAFA changed the application of the "percentage fee method" for coupon settlements in federal court); Charles W. "Rocky" Rhodes, *Attorneys' Fees in Common-Fund Class Actions: A View from the Federal Circuits*, 35 The Advoc. (Texas) 56, 60 (2006) (explaining that "CAFA authorizes employing the percentage method" whereby fees are "based on the value of the coupons actually redeemed rather than estimating a redemption rate in percentage cases").

the heading for § 1712(a), the term "contingent fees" is best understood as a synonym for "percentage-of-recovery fees."

Consistent with that understanding, § 1712(a) refers to "*the portion* of any attorney's fee *award* attributable to the *award* of the coupons . . . " (emphasis added). The majority's discussion of § 1712(a) downplays the word "portion," (and, as we shall see, the majority entirely elides the term "portion" in its discussion of subsections (b) and (c)). Maj. Op. at 16–20. But "[c]ourts must aspire to give meaning to every word of a legislative enactment." *Miller v. United States*, 363 F.3d 999, 1008 (9th Cir. 2004). And the word "portion" is an aid in understanding the meaning of the entire "contingent fee" provision in CAFA.

A "portion" means a "share" or "allotted part," a fraction. *See* Black's Law Dictionary 1280 (9th ed. 2009). Accordingly, the phrase "a *portion* of an attorney's fee *award*" only makes sense if the word "award" refers to a divisible item or amount—here, the monetary sum awarded to counsel. If "award" in this context referred only to a "final judgment or decision," Black's Law Dictionary 157 (9th ed. 2009), rather than the actual *value* of the fees assessed, it would make little sense to speak of a "portion" of the award.

The word "award" appears again in the same section, in reference to the "award of the coupons." § 1712(a). "[I]t is a 'normal rule of statutory construction' that 'identical words used in different parts of the same act are intended to have the same meaning.'" *Taniguchi v. Kan Pac. Saipan, Ltd.*, 132 S. Ct. 1997, 2004–05 (2012) (quoting *Gustafson v. Alloyd Co., Inc.*, 513 U.S. 561, 570 (1995)); *see also Sun v. Ashcroft*, 370 F.3d 932, 939 (9th Cir. 2004). Thus, just as the "attorney's fee award" refers to the monetary value of the

fees assessed, the "award of the coupons" refers to the monetary value of the coupons. The words "attributable to," in the phrase "the portion of any attorney's fee award . . . attributable to the award of the coupons," therefore describe the relationship *between these values*—that of a portion of the attorney's fees and that of the coupons. In other words, the term "attributable" supplies the connection between two measures of value, indicating that the section is concerned with those situations in which the *value* of fees, in whole or in part, is derived from the *value* of the coupons provided.

It follows, then, that the mandatory language in § 1712(a), "shall be based on the value to class members of the coupons that are redeemed," applies only to that portion of any attorney's fee award that is calculated as a percentage of the coupon-based relief. In some cases, no portion of the attorney's fees will be "attributable to" the coupon award in the sense of calculated as a percentage of the coupon value, and therefore § 1712(a) will not apply.

The majority assumes, contrary to this analysis, that "the portion of any attorney's fee award to class counsel that is attributable to the award of the coupons" means *any* fee for obtaining coupon relief. But the text of § 1712(a) does not refer to fees "for *obtaining* coupon *relief*" (emphases added). *See* Maj. Op. at 21. Instead, as noted, it refers to circumstances where the fee is "attributable" to the coupon "award," where, in context, "award" connotes a measure of value. Moreover, as will shortly appear, the majority's construction would deprive § 1712 (b) and (c) of their role as alternative approaches to the calculation of attorney's fees. Statutory interpretation cannot be sensibly accomplished by isolating closely interrelated subsections from each other. Instead, each such subsection may throw light on the

others—and, as I shall soon discuss, subsections (b) and (c) expressly contemplate lodestar-based fees where coupons are awarded.

Moreover, the legislative history cited by the majority fully confirms my understanding of § 1712(a). *See* Maj. Op. at 24. The Senate Report from the Committee on the Judiciary provides that attorney's fees should be "based on the demonstrated *value* of coupons actually redeemed" when "*it is proposed* that an attorney fee award be based solely on the purported *value* of the coupons." S. Rep. No. 109-14, at 30 (emphases added). This language confirms that § 1712(a) was concerned with fees calculated based on the *value* of coupons—that is, traditional or percentage "contingent" fees—and not with all fees in class actions that result in coupon settlements, even if calculated on a lodestar basis. This passage from the legislative history also confirms that class counsel retain, under § 1712, the option to decide whether to seek attorney's fees based on the value of the coupon relief or not. If the majority were correct, and *some portion* of the fee award would always be "attributable to" the coupon award in settlements involving coupon relief, then counsel would have no such flexibility.

In short, § 1712(a) requires only that *if* fees are calculated as a percentage of the value of coupons awarded, that value must comprise only redeemed coupons. The subsection does not mandate that whenever coupons are awarded, the percentage method—or "contingent fee" method—must be used.

**B**

Subsection 1712(b) strongly reinforces—indeed, compels—this understanding of § 1712(a), by directly and comprehensively addressing the use of the lodestar technique for attorney's fee awards in coupon settlements. The title of § 1712(b), "*Other* attorney's fee awards in coupon settlements" (emphasis added), refers without limitation to fees "*in* coupon settlements" (emphasis added), not to fees for equitable relief only, indicating that § 1712(b) contemplates an alternative method of calculating attorney's fees "in coupon settlements" generally.

Subsection (b) goes on to specify that if "a portion of the recovery of the coupons is *not* used to determine the attorney's fee to be paid to class counsel," then "*any* attorney's fee award shall be based upon the amount of time class counsel reasonably expended working on the action." § 1712(b)(1) (emphases added). Again, "a portion" means a percentage, which is, of course, just another way of expressing a fraction. So, to determine fees using a "portion of the recovery of the coupons" means to calculate fees as a percentage of the value of the coupons—in other words, to calculate a "contingent fee," in attorney's fee lingo. Subsection (b)(1) thus applies whenever a proposed settlement includes recovery of coupons, whether exclusively or in part, but does *not* calculate fees as a percentage of the coupons provided by the settlement; § 1712(b)(1) specifies that in that instance, a lodestar fee should be awarded. In other words, *if* the percentage-of-recovery method described in § 1712(a) is not used, then the lodestar method should be used instead. And that directive applies to "*any*" attorney's fee award "in coupon settlements," not only to fees tied to equitable relief.

The majority insists on a contrary interpretation—that the lodestar method set forth in § 1712(b) is applicable only in situations in which a coupon settlement also provides for non-coupon relief, pertains only to that non-coupon relief, and is mandatory for any fees for obtaining non-coupon relief.  Maj. Op. at 20.  But nothing in § 1712(b)(1) limits the application of the lodestar method to fees for hours worked on obtaining equitable or other non-coupon relief.  Rather, the heading of subsection (b)(1), "[i]n general," and the reference to "*any* attorney's fee" (emphasis added), both indicate that it applies *whenever* the settlement "provides for a recovery of coupons" and the percentage-of-recovery method described in § 1712(a) is not used.

The majority comes to a contrary conclusion only by repeatedly truncating the language of § 1712(b), as if it applied whenever "recovery of the coupons is not used to determine" the fee (a grammatically incoherent phrase, I note), *see* Maj. Op. at 21, as opposed to whenever "a *portion* of the recovery of the coupons is not used to determine the attorney's fee," § 1712(b) (emphasis added).  But, once again, the "portion" term is essential here, indicating that the distinction is between percentage fees and lodestar fees, not between fees for coupons and fees for equitable relief.  Once one places the word "portion" back where it belongs in § 1712(b), the majority's accusation that my reading of § 1712(b) renders § 1712(a) a nullity, Maj. Op. at 19, falls flat:  Subsection 1712(a), on my reading, covers circumstances in which fees are calculated, in whole or part, as a "portion"—a percentage—of the coupons awarded, while § 1712(b) covers circumstances in which the percentage method is not the one used.

This conclusion is reinforced by the phrase "used to determine" in § 1712(b)(1).  That phrase indicates that the circumstances excluded from § 1712(b) are those in which the percentage method "determine[s]" the fee, and not simply those in which fees are awarded in whole or part "for obtaining coupon relief." Maj. Op. at 21.

Moreover, § 1712(b) does not isolate the type of class relief for which counsel is compensated.  Instead, subsection (b)(1) refers to work done "*on the action*" (emphasis added), thereby permitting the use of a lodestar method to calculate fees based on time spent on the case as a whole—including time spent obtaining coupon relief.  Subsection (b)(2) reinforces this directive, by specifying that a lodestar fee under subsection (b) "shall *include* an appropriate attorney's fee, *if any*, for obtaining equitable relief, including an injunction, *if applicable*." § 1712(b)(2) (emphases added). The use of the word "include," and the phrases "if any" and "if applicable," to refer to equitable relief confirm that the lodestar fee provided for in subsection (b)(1) is *not* limited to equitable relief.

Last, the actual distinction drawn by § 1712(b), rather than the one the majority invents, makes perfect sense in the context of the concerns that motivated § 1712—namely, the potential for huge fees through a percentage approach, where the percentage was of all coupons that *could* be redeemed, even though few were. *See* S. Rep. No. 109-14, at 30.

In sum, from its title to its substantive reach to its operative text, § 1712(b) evidences that lodestar fees are an available method of calculating fees for settlements that

48          IN RE: HP INKJET PRINTER LITIGATION

include coupon awards, whether or not the settlement also includes equitable relief.[11]

## C

Finally, § 1712(c)—titled "Attorney's fee awards calculated on a mixed basis in coupon settlements"—builds upon § 1712(a) and (b), addressing how the percentage-of-recovery and lodestar methods described in each of those preceding subsections may be used in combination to award fees for a coupon settlement. Nothing in subsection (c) *requires* that both methods of fee calculation be used when the settlement includes both coupon and non-coupon relief.

As is evident from the subsection's title, what is *mixed* in instances covered by § 1712(c) is the *method* for calculating fees, not the nature of the settlement award (i.e., coupons, equitable or monetary relief). Although the first phrase of subsection (c) refers to mixed types of class relief[12]—settlements involving *both* coupon and equitable relief—the substantive provisions, subsections (c)(1) and (c)(2), break out the application of the preceding subsections,

---

[11] There is little case law interpreting § 1712(b), but courts that have addressed the issue recognize that the subsection allows the calculation of fees in a coupon settlement on the basis of hours class counsel worked. *See, e.g.*, *True v. Am. Honda Motor Co.*, 749 F. Supp. 2d 1052, 1077 (C.D. Cal. 2010) ("[T]he lodestar method of awarding fees is permissible under CAFA . . . ."); *Fleury v. Richemont N. Am., Inc.*, No. C-05-4525 EMC, 2008 WL 4680033, at *5 (N.D. Cal. Oct. 21, 2008) (unpublished); *Perez v. Asurion Corp.*, No. 06-20734-CIV, 2007 WL 2591180, at *1–2 (S.D. Fla. Aug. 8, 2007) (unpublished) (citing S. Rep. No. 109-14, at 31).

[12] That phrase reads: "If a proposed settlement in a class action provides for an award of coupons to class members and also provides for equitable relief, including injunctive relief—." § 1712(c).

§ 1712 (a) and (b), based not on the relief granted but on the fee methodology used. Thus, each subparagraph refers to "*that portion of the attorney's fee*" calculated in a certain manner—either "based upon a portion of the recovery of the coupons" or "not based upon a portion of the recovery of the coupons" (emphasis added). Nothing in the text of either subparagraph excludes the possibility that, in cases involving both coupon and equitable relief, *no portion* of the fee award is to be paid in the manner addressed by that paragraph. That is, even when there is a mixed class remedy, it may be the case—as it was here—that the only fees assessed are those calculated in accordance with § 1712(b), as lodestar fees.

The majority yet again goes wrong by ignoring the word "portion," which appears twice in both § 1712(c)(1) and § 1712(c)(2). In both instances, the first use of the term refers to the "portion" of the fee award, but the second refers to the calculation of fees as "a portion of *the recovery of the coupons*" (emphasis added)—that is, contingent or percentage fees. So, once again, the distinction between the application of § 1712(a) and § 1712(b) is drawn on the basis of the methodology used, not the relief obtained. And the legislative history the majority quotes is similar, explaining the distinction as one between "the portion of the award that is a *contingent fee* based on the *value* of the coupons" and "the portion not based on the *value* of the coupons." S. Rep. No. 109-14, at 31 (emphasis added); *see* Maj. Op. at 24. Lodestar fees are based on hours worked and rates charged, not on the value of recovery, and so are not the "contingent fee" to which the history quoted refers.

## D

Looked at as a whole, then, § 1712(a), (b), and (c) set forth three approaches to calculating fees in coupon awards: as a percentage of the value of redeemed coupons; as a function of hours reasonably worked on the action; or as a combination of the two approaches. In a settlement involving coupons, *if* attorneys are, in whole or in part, awarded contingent fees—that is, fees equal to a percentage of the purported monetary value of the class relief—CAFA requires federal courts to assess those fees based on the value of the coupons actually redeemed. § 1712(a). But where a district court opts *not* to award fees on a percentage basis, CAFA requires the fees to be based on hours reasonably expended working on the action, using a lodestar approach. § 1712(b)(1)–(2).

My understanding of the statute, but not the majority's, comports with long-established principles underlying attorney's fees in class actions generally. "[A] mechanical or formulaic application of either [the lodestar or the percentage-of-the-fund] method, where it yields an unreasonable result, can be an abuse of discretion." *Fischel v. Equitable Life Assur. Soc'y of the U.S.*, 307 F.3d 997, 1007 (9th Cir. 2002) (quoting *In re Coordinated Pretrial*, 109 F.3d at 607) (internal quotation marks omitted). The majority supposes that, in CAFA, Congress broadly mandated such a mechanical, potentially unreasonable approach where a settlement includes coupons. Under the majority's interpretation, for example, if a coupon settlement were reached after plaintiffs' attorneys did very little work, the attorneys would nonetheless be statutorily entitled to receive a fee equivalent to up to the benchmark twenty-five percent of the value of the redeemed coupons, instead of a lodestar

fee based on hours worked, which could amount to much less. For all the reasons already surveyed, Congress did not intend such unreasonable results, but instead left district courts with the discretion to calculate fees using either approach.

The majority warns that allowing class counsel to obtain lodestar fees for an entire class settlement, including coupon relief, would enable counsel to "walk[] away from a case with a windfall, while class members walk away with nothing," thereby "run[ning] counter to one of the main purposes of CAFA: discouraging coupon settlements—particularly those where presumably valuable (but actually worthless) coupons form some part of the basis for an attorneys fees award." Maj. Op. at 25–26. But this scenario ignores the safeguards that exist independent of CAFA to prevent such outcomes. As I have explained, district courts have an obligation to ensure that attorney's fees are reasonable by cross-checking lodestar-based awards against a variety of factors, including the estimated benefit obtained by the class, just as courts must cross-check percentage-based fees against a lodestar calculation.

Moreover, the problem of excessive attorney's fees is not limited to coupon settlements in which class members receive "scrip" while attorneys receive cash; the risk is also present in settlements providing a small cash award to each class member. In cases involving such cash relief, attorney's fees could be greatly disproportionate to the benefit received by class members, whether calculated as a lodestar or a percentage-of-recovery, depending on a variety of factors—including, *inter alia*, the speed of settlement, the size of the class, and the strength and complexity of the plaintiffs' claims. Nothing in CAFA addresses fee awards in such cases. Instead, the limited concern addressed in § 1712

of CAFA is the overvaluing of a coupon recovery to boost a percentage-of-fund fee award.

**E**

Although legislative history has been downplayed in recent years as a useful tool for statutory interpretation, I continue to find it helpful when properly used. Of course, "[e]xtrinsic materials have a role in statutory interpretation only to the extent they shed a reliable light on the enacting Legislature's understanding of otherwise ambiguous terms." *Exxon Mobil Corp. v. Allapattah Servs., Inc.*, 545 U.S. 546, 568 (2005). As I have stated elsewhere, *see James v. City of Costa Mesa*, 700 F.3d 394, 409 n.2 (9th Cir. 2012) (Berzon, J., concurring in part and dissenting in part), self-conscious congressional declarations of interpretive or application precepts are indeed manipulable and may reflect an attempt to enforce principles that would not have been adopted if incorporated into the statute. *See Exxon Mobil*, 545 U.S. at 568. But clues discernable from legislative materials, such as the Senate Report on which I here rely, concerning how the legislators considering the bill were *speaking* about the statute at hand, aid rather than impede statutory interpretation. The manner in which language was used when the bill was under consideration may illuminate apparent imprecisions in the later-enacted statute.

Here, the legislative history of CAFA confirms that courts are not obliged to base attorney's fees on the value of coupons, but rather retain the choice to use either of the traditional methods, subject to the qualifications set forth in § 1712. I have already quoted some of the relevant language. In addition, the "purpose" section of the Senate Judiciary Committee Report indicates that CAFA's Consumer Class

In re: HP Inkjet Printer Litigation          53

Action Bill of Rights, codified at 28 U.S.C. §§ 1711–1713, contains provisions

> specify[ing] the methods for calculating attorney's fees in class settlements in which coupons constitute *all or part* of the relief afforded to claimants to ensure that such fee awards are consistent with the benefits afforded class members *or* the amount of real work that the class counsel have performed in connection with the litigation.

S. Rep. No. 109-14, at 5 (emphases added). The Report goes on to describe the flexibility class counsel retains:

> In some cases, the proponents of a class settlement involving coupons may decline to propose that attorney's fees be based on the value of the coupon-based relief provided by the settlement. *Instead*, the settlement proponents may propose that counsel fees be based upon the amount of time class counsel reasonably expended working on the action.

*Id.* at 30 (emphasis added).

So, as described in the Senate Report, § 1712 retained rather than replaced district courts' discretion to choose between percentage-of-recovery and lodestar fees for coupon settlements. The concern reflected in § 1712(a), in other words, was with *how* a contingency fee should be calculated, not with whether only contingency fees—that is, percentage-of-recovery fees—should be allowed.

As I have explained, § 1712 (a), (b), and (c), especially when read in light of one another rather than in isolation, accomplish exactly what the Committee indicated the statute set out to do.  They leave to district judges the flexibility to choose between the two primary fee calculation methodologies that they had available to them before CAFA and continue to have after CAFA in common fund cases involving monetary relief.  Section 1712 did not disturb our case law requiring that fees be adjusted to reflect the benefits actually obtained, in part through a cross-check with the other methodology.  But § 1712 did restrict the calculation of contingency fees, by requiring that a percentage-of-recovery fee be based on redeemed coupons, not on hypothetically available coupons.

### Conclusion

Here, the district court proceeded exactly as required by our class action settlement case law and as permitted by § 1712: It did not award a contingency fee, calculated as a percentage of the purported value of the total class recovery.  Instead, it chose to award a lodestar fee, calculated on the basis of hours worked and rates charged, carefully limited by a fair estimate of the amount of the benefit received by the class.  There was no violation of § 1712 of CAFA.

As I would hold the fee award consistent with CAFA, § 1712, I respectfully dissent.[13]

---

[13] Because the majority does not do so, I do not address the other challenges the objectors mount to the settlement.